JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-04744 MMM (CWx) | Date | January 14, 2015 |

| | |
|---|---|
| Title | *Bridewell-Sledge, et al. v. Blue Cross of California, et al.* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order Remanding Action to Los Angeles Superior Court**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2011, plaintiffs Ebony Bridewell-Sledge and Bettie Perry filed this putative class action in San Francisco Superior Court against Blue Cross of California ("Blue Cross"), Anthem Blue Cross Life and Health Insurance Company ("Anthem"), and various fictitious defendants, alleging claims for employment discrimination and unfair business practices.[1]  On November 30, 2011, defendants filed a motion to transfer the case to Los Angeles Superior Court, which was denied.[2]  They filed a renewed motion to transfer that was granted on January 26, 2012.[3]

On November 19, 2013, the Los Angeles Superior Court consolidated the case with a related class

---

[1] Notice of Removal ("Removal"), Docket No. 1 (June 19, 2014), Exh. 1 ("Complaint").  All citations are to Case No. CV 14-04744, unless otherwise noted.

[2] Volume 4 of Appendix of Plaintiff's Pleadings and Court Orders Served in Superior Court, Docket No. 5 (June 19, 2014), Exh. 10 (Order Denying Defendant's Motion to Transfer & Coordination of Action).

[3] *Id.*, Exh. 12 (Order Granting Defendants' Motion to Transfer Venue to the Los Angeles County Superior Court).

action, *Jermaine Crowder v. Blue Cross*.[4] On July 19, 2013, the state court sustained defendants' demurrer to the complaint in part.[5] Plaintiffs amended their complaint to substitute the Wellpoint Companies, Inc. ("Wellpoint") and the Wellpoint Companies of California, Inc. ("Wellpoint California") (collectively, "the Wellpoint defendants"), for two of the fictitious defendants on May 12, 2014.[6] They served the Wellpoint defendants on May 21, 2014. On June 19, 2014, defendants removed this action, and separately removed the *Crowder* action, invoking the court's jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d)(2), *et seq*.[7] As had the state court, the court thereafter consolidated the cases.[8]

On July 17, 2014, the court issued an order to show cause why the *Bridewell* action should not be remanded to state court for lack of subject matter jurisdiction.[9] It directed defendants to demonstrate that there was minimal diversity of citizenship and to brief whether the court was required to decline jurisdiction under CAFA's home state and/or local controversy exceptions. Plaintiffs, for their part, filed a motion to remand on July 21, 2014.[10] In it, they contended that defendants removal was untimely and that the court should decline jurisdiction under the home controversy exception. On July 24, 2014, defendants filed a response to the order to show cause.[11] Plaintiffs filed a reply on July 29, 2014.[12]

The court discharged the order to show cause in the *Bridewell* action on August 28, 2014, finding that the citizenship of the parties was minimally diverse, and that the home state controversy exception

---

[4]Volume 6 of Appendix to Plaintiff's Pleadings and Court Orders Served in Superior Court ("Volume 6"", Docket No. 7 (June 19, 2014), Exh. 39 (Minutes of Hearing Consolidating Cases).

[5]Volume 5, Exh. 32 (Court's Ruling and Order re: Blue Cross of California's Demurrers).

[6]Volume 6, Exhs. 43 (May 12, 2014 Amendment to Complaint re: Wellpoint), 44 (May 12, 2014 Amendment to Complaint re: Wellpoint California).

[7]Removal at 2.

[8]Consolidation of Case CV14-4747-MMM (CWx) Under Case Number CV14-4744-MMM (CWx), Docket No. 22 (July 17, 2014).

[9]Order to Show Cause Why Case Should Not Be Remanded, Docket No. 21 (July 17, 2014).

[10]Motion to Remand Case, Docket No. 23 (July 21, 2014).

[11]Defendants' Response to Order to Show Cause why Actions Should Not Be Remanded ("Response"), Docket No. 26 (July 24, 2014).

[12]Plaintiffs' Reply to Defendants' Response to Court's Order to Show Cause ("Reply"), Docket No. 28 (July 29, 2014).

was inapplicable because Wellpoint is a primary defendant and not a citizen of California.[13] The court also found that there was insufficient evidence in the record to find that the local controversy exception applied.[14] One of the prerequisites to application of the local controversy exception is that "during the 3-year period preceding the filing of th[e] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." See 28 U.S.C. § 1332(d)(4)(A)(ii). Based on the evidence in the record at the time the court discharged the *Bridewell-Sledge* order to show cause, it could not determine whether the *Bridewell* or *Crowder* action had been filed first, and thus could not decide whether the local controversy exception applied.[15]

The same day it discharged the order to show cause in *Bridewell-Sledge*, the court issued an amended order to show cause why the *Crowder* case should not be remanded.[16] As in this action, the court directed defendants to demonstrate that there was minimal diversity of citizenship between the parties, and that the court was not required to decline jurisdiction under the local controversy and/or home state controversy exceptions.[17] On September 9, 2014, defendants filed a response.[18] In it, defendants argued that the local controversy exception did not apply because plaintiffs "ha[d] not shown which class action was filed first and [thus] ha[d] not met their burden to prove that no similar class action [had been] filed within three years before the *Crowder* [c]omplaint was filed."[19]

Plaintiffs replied on September 16, 2014,[20] asserting that the *Bridewell-Sledge* action had been filed "exactly 13 minutes and 50 seconds" before the *Crowder* action.[21] As a result, plaintiffs asserted that the local controversy exception covered the *Bridewell-Sledge* action, and that it should be

---

[13]Order Discharging Order to Show Cause ("Order"), Docket No. 33 (Aug. 28, 2014) at 4-5, 8-11.

[14]*Id*. at 5-8.

[15]*Id*. at 11.

[16]Order to Show Cause Why Case Should Not Be Remanded For Lack of Jurisdiction, Case No. CV 14-07477 MMM (CWx), Docket No. 29 (Aug. 28, 2014).

[17]*Id*. at 2.

[18]Response to Order to Show Cause Why Case Should Not Be Remanded ("Response"), Case No. CV 14-07477 MMM (CWx), Docket No. 30 (Sept. 9, 2014).

[19]*Id*. at 6.

[20]Reply to Defendants' Response to Order to Show Cause ("Reply"), Case No. CV 14-07477 MMM (CWx), Docket No. 31 (Sept. 16, 2014).

[21]*Id*. at 6.

remanded.[22] On September 17, 2014, plaintiffs filed an amended declaration in support of their reply, which proffered evidence as to when the *Crowder* and *Bridewell-Sledge* actions were filed.[23]

Defendants filed objections to plaintiffs' reply on September 29, 2014, contending that it exceeded the scope of the order to show cause and their response.[24] Specifically, they argued that plaintiffs' argument concerning remand of the *Bridewell-Sledge* action was improper.[25] Defendants asked that the court not consider the new argument and evidence; alternatively, they sought leave to file a surreply.[26] On October 23, 2014, the court granted defendants leave to file a surreply.[27] The same day, the court denied plaintiffs' motion to remand, concluding that defendants' notice of removal was timely, and that the home state controversy exception was inapplicable; the court did not address the local controversy exception as it was not raised in the motion.[28] On October 30, 2014, defendants filed their

---

[22]*Id*.

[23]Amended Declaration of Mindy Menahen ("Menahen Decl."), Case No. CV 14-07477 MMM (CWx), Docket No. 36 (Sept. 17, 2014). The original declaration was filed on September 16, 2014, with the reply; it was not signed, however. (See Declaration of Mindy Menahen, Case No. CV 14-07477 MMM (CWx), Docket No. 33 (Sept. 16, 2014).)

[24]Defendants' Objection to Plaintiffs' Reply to Defendants' Response ("Objections"), Case No. CV 14-07477 MMM (CWx), Docket No. 36 (Sept. 29, 2014).

[25]*Id.* at 2-3.

[26]*Id*. at 4.

[27]Order Granting Defendants' Request to File Sur-Reply, Case No. CV 14-07477 MMM (CWx), Docket No. 37 (Oct. 23, 2014).

[28]Order Denying Plaintiffs' Motion to Remand, Docket No. 41 (Oct. 23, 2014) at 7-20. The court clarified its prior conclusion that the home state controversy did not apply. It noted that defendants had proffered information concerning the citizenship of WellPoint, Inc. and WellPoint California Services, Inc., but had provided employment data for The WellPoint Companies, Inc. Plaintiffs sued The WellPoint Companies, Inc. and The WellPoint Companies of California, Inc. In discharging the *Bridewell-Sledge* order to show cause, the court assumed that plaintiffs had named the parties erroneously and that the entities it intended to sue were WellPoint, Inc. and WellPoint California Services, Inc. In light of the discrepancies in the corporate information provided by defendants in opposition to the motion to remand, however, the court denied the motion without prejudice to its renewal if plaintiffs were able to develop evidence through discovery demonstrating that plaintiffs' WellPoint employer (and thus the proper defendant) is a California citizen.

surreply.²⁹ On November 5, 2014, they filed a request for judicial notice in support of the surreply.³⁰

## II. DISCUSSION

### A.  Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court involves a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B.  Legal Standard Governing CAFA Jurisdiction

In 2005, Congress enacted CAFA, Pub. L. No. 109-2, 119 Stat. 4. CAFA gives district courts original jurisdiction to hear class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which[, *inter alia*,] any member of a class of

---

²⁹Defendants' Surreply ("Surreply"), Case No. CV 14-07477 MMM (CWx), Docket No. 38 (Oct. 30, 2014).

³⁰Request for Judicial Notice, Case No. CV 14-07477 MMM (CWx), Docket No. 42 (Nov. 5, 2014). In the request for judicial notice, defendants ask that the court notice a Senate Report concerning CAFA. See S. REP. NO. 109-14 (2005). Courts may take judicial notice of Senate Reports. See *Anderson v. Holder*, 673 F.3d 1089, 1103 n.1 (9th Cir. 2012) ("Anderson submitted two motions for judicial notice. The first requests that we take notice of excerpts from a Senate Report. Legislative history is properly a subject of judicial notice"); *Chaker v. Crogan*, 428 F.3d 1215, 1229 (9th Cir. 2005) (taking judicial notice of the legislative history of a California statute). The court therefore grants defendants' request for judicial notice. The court cites directly to the senate report for the sake of convenience, rather than to defendants' judicial notice request.

plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luthis v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where [the citizenship of] at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA also provided for such class actions to be removable to federal court. See 28 U.S.C. § 1453(b). CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

The Ninth Circuit has confirmed that CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

Even if a defendant shows that removal is otherwise proper under 28 U.S.C. § 1332(d)(2), the district court may be required to decline jurisdiction under two exceptions – 28 U.S.C. § 1332(d)(4)(A), the "local controversy" exception, and 28 U.S.C. § 1332(d)(4)(B), the "home state controversy" exception. The local controversy exception applies if (1) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed"; (2) "at least 1 defendant is a defendant – (aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed"; (3) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) during the 3-year period preceding the filing of th[e] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A). The home state controversy exception, which is not relevant here, requires that the

district court decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The burden of establishing that these exceptions apply lies not with the removing party, but with the party seeking remand; here, this is plaintiffs. See *Serrano*, 478 F.3d at 1019 ("The structure of the statute and the long-standing rule on proof of exceptions to removal dictate that the party seeking remand bears the burden of proof as to any exception under CAFA").

### C. Whether the Court Lacks CAFA Jurisdiction to Hear This Action Under the Local Controversy Exception

Defendants concede that more than two-thirds of the plaintiffs are citizens of California, at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims is a California citizen, and the principal injuries about which plaintiffs complain were suffered in California. The issue, therefore, is whether "during the 3-year period preceding the filing of [this] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii).

The court previously explained that courts applying the fourth prong of the local controversy exception to two actions filed the same day have looked to which action was filed first, and concluded that under the plain language of the statute, the first-filed action was filed within three years preceding the filing of the second action, such that the court lacks jurisdiction over the first-filed action but not the second.[31] See *Gibo v. U.S. National Association*, CIV. 12-00514 SOM, 2013 WL 363140, *7 (D. Haw. Jan. 29, 2013) ("Under Plaintiff's counsel's reasoning, his client would be permitted to forum shop by filing multiple class actions on the same day. This simply cannot be the law. At the very least, by virtue of being filed four minutes later, the *Lima* action should remain in federal court"); *Lafalier v. Cinnabar Serv. Co., Inc.*, 10-CV-0005-CVE-TLW, 2010 WL 1486900 (N.D. Okla. Apr. 13, 2010) ("Even though the timing issue is a red-herring [because the similar case was not filed against defendant and therefore did not bar jurisdiction whenever it was filed], the Court finds that this case was filed before the Ottawa County case, and there was no class action concerning the same or similar allegations on file at the time plaintiffs' filed this case. The original petition is time-stamped and shows that this case was filed in Tulsa County District Court at 3:23 p.m. on April 2, 2009. . . . Plaintiffs' counsel Jeff D. Marr stated that he did file the Ottawa County case just before the close of business on April 2, 2009, and his co-counsel, Emily N. Kitch, confirmed his statements. The Court accepts the representations of plaintiffs' counsel, and finds that he did file the Ottawa County case after filing this case").

In their reply to the order to show cause in the *Crowder* action, plaintiffs asserted that the *Bridewell-Sledge* action had to be remanded because it was filed "exactly 13 minutes and 50 seconds"

---

[31]Order at 5.

before *Crowder*.[32] In support of this assertion, plaintiffs cite the filing receipts for both the *Crowder* and the *Bridewell-Sledge* actions. The filing receipt for the *Bridewell-Sledge* action indicates it was filed at 1:27:18 p.m. on October 20, 2011,[33] while the filing receipt in *Crowder* indicates that it was filed at 1:41:08 p.m. on October 20, 2011.[34] They also proffer the declaration of Mindy Menahen. She states that she spoke with Maura Rodriguez, the civil filing supervisor at the San Francisco Superior Court located at 400 McAllister Street, San Francisco, California.[35] Rodriguez stated that the time the clerk enters case information into the computer system is the time the case is deemed filed. She noted that an earlier filed case will have a lower case number than a later-filed case, and that the San Francisco Superior Court keeps electronic records of when cases are filed.[36] Consistent with the filing receipts, Rodriguez stated that *Bridewell-Sledge* was first entered into the system at 1:27 p.m. on October 20, 2011, and that *Crowder* was later entered into the system at 1:41 p.m.[37] Because *Bridewell-Sledge* was filed 13 minutes and 50 seconds before Crowder, plaintiffs assert that the court must decline to exercise jurisdiction over the *Bridewell-Sledge* action.

As an initial matter, the court notes, as it did in discharging the order to show cause in this case, that courts have remanded cases under the local controversy exception even where, as here, they were previously consolidated with an action over which the court has jurisdiction.[38] In *Sherman v. Mantle Oil & Gas*, LLC, No. CV 10-2774, 2011 WL 130240 (E.D. La. Jan. 14, 2011), for example, the district court had consolidated two class actions originally filed in state court and later removed to federal court. On plaintiffs' motion to remand the first-filed case,[39] the court found the local controversy exception applied, stating:

> "Undoubtedly, remanding the Hendrix Action [which was filed five days before the Sherman Action] to proceed in state court while the Sherman Action proceeds in this Court is inefficient. But it is not entirely unprecedented that a court may have jurisdiction

---

[32]Reply at 6-7.

[33]Declaration of Andre E. Jardini ("Jardini Decl."), Docket No. 32 (Sept. 16, 2014), Exh. 2 (*Bridewell-Sledge* filing receipt).

[34]*Id.*, Exh. 3 (*Crowder* filing receipt).

[35]Menahen Decl., ¶ 3.

[36]*Id.*, ¶¶ 7-9.

[37]*Id.*, ¶¶ 10-11.

[38]Order at 7.

[39]In the order discharging the order to show cause, the court stated that the Sherman plaintiffs sought to remand the second-filed action to state court under the local controversy exception. (*Id*. at 6.) This was incorrect. Plaintiffs sought to remand the first-filed action, which was the correct result under the local controversy exception.

over some but not all of a group of similar potential class actions that might otherwise benefit from consolidation. For example, this Court dealt with three proposed class actions brought on behalf of patients and visitors present in several local hospitals during Hurricane Katrina. The cases alleged similar theories that the hospital owners and operators negligently prepared for the storm. The Court had jurisdiction over two of those proposed class actions but remanded one to state court. The present situation is more striking because the two class actions arise out of exactly the same factual predicate, share a common defendant, and evidently possess overlapping proposed class definitions. Here, the Court must remand one class action but exercise jurisdiction over another solely because one group of attorneys beat another to the courthouse by five days. The parties have not cited and the Court's own research has not revealed another opinion addressing a situation quite like this. Nonetheless, in these circumstances the statute requires that the Court decline to exercise jurisdiction over the [first-filed] [a]ction." *Id.* at \*3-4 (internal citations omitted).[40]

The court agrees with the *Sherman* court's interpretation of the statute, as it merely applies the plain language of the statute. It therefore concludes that the fact the two cases have been consolidated does not necessitate a finding that the fourth prong of the local controversy exception is met. In their surreply, defendants do not dispute, and therefore concede, that *Bridewell-Sledge* was filed before *Crowder*. The court therefore finds that the fourth prong of the local controversy exception is satisfied as to the *Bridewell-Sledge* action, such that the court must decline to exercise jurisdiction over it.

Defendants do not dispute that *Bridewell-Sledge* was filed before *Crowder*, nor do they do

---

[40] As the court previously noted, the standards governing consolidation of actions and a determination as to whether the fourth prong of the local controversy exception is met are similar, such that where consolidation of two cases is warranted, the local controversy exception will not apply to the second-filed action. See *Anderson v. Hackett*, 646 F.Supp.2d 1041, 1051 (S.D. Ill. 2009) ("An action alleging the contamination of real property in Illinois could never be consolidated or coordinated with an action alleging the contamination of real property in another locale. This is a good indication that the two actions do not 'assert[ ] the same or similar factual allegations' within the meaning of [CAFA]. Therefore, the Court finds that Plaintiffs have established this element as well"); cf. *Mireles v. Wells Fargo Bank, N.A.*, 845 F.Supp.2d 1034, 1056 (C.D. Cal. 2012) ("For th[e] [local controversy] exception to apply, it must be the case that 'no other class action . . . asserting the same or similar factual allegations' ha[s] been filed in the last three years. Defendants contend that *Nelson v. Wells Fargo Bank, N.A.*, CV No. 11-05573 DMG (SSx), alleges 'almost identical' facts against Wells Fargo. Despite the purported identity of facts, neither defendants nor plaintiffs sought to relate this case to *Nelson*, or to consolidate the actions before the same judge. The Nelson case involved different defendants represented by different counsel. Judge Gee evaluated whether the two cases were related, and concluded that while they 'share[d] some common defendants and legal theories, there is no overlap of plaintiffs and no overlap with respect to certain major defendants.' Given the many apparent dissimilarities between the two cases, it is not at all clear that the *Nelson* mass action precludes this court's exercise of jurisdiction under CAFA").

contend other similar actions were filed within the preceding three year period.[41] They assert, however, that the court should not remand the action to Los Angeles Superior Court because to do so would circumvent the purpose of the local controversy exception.[42] Specifically, defendants contend that the legislative history of CAFA shows that Congress enacted the local controversy exception to ensure that class actions "with a truly local focus" would not be removed to federal court. They cite Senate Committee notes, in which the "Committee . . stress[ed] that in assessing whether each of [the local controversy] criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy – a controversy that uniquely affects a particular locality to the exclusion of all others." See S. REP. NO. 109-14 at 39 (2005). Defendants' argument is unpersuasive for two reasons.

When reviewing the language of a statute, the court's task is always to discern the intent of Congress. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996). The inquiry begins with the words of the statute. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). "When the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete." *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (alterations original)).

Defendants identify no ambiguity in the text of the local controversy exception that requires recourse to expressions of legislative intent. Indeed, the meaning of the requirement that "during the 3-year period preceding the filing of the class action, no other class action ha[ve] been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons," is not subject to reasonable dispute. 28 U.S.C. § 1332(d)(4)(A)(ii). Defendants cite the Senate report as support for their assertion that the *Bridewell-Sledge* action does not involve "a controversy that uniquely affect[s] a particular locality to the exclusion of all others." See S. REP. NO. 109-14 at 39. The court disagrees. There is no dispute that all members of the putative plaintiff class were employed by defendants solely in California. Thus, the controversy *does* uniquely affect a particular locality, i.e., California, to the exclusion of all others. Defendants' argument is curious, in fact, given that they have never disputed that two-thirds of the plaintiff class are citizens of California, and the principal injuries about which plaintiffs complain were suffered in California. Although it is true that Wellpoint is not a citizen of California, the local controversy exception requires only that "at least *1* defendant" from whom significant relief is sought and whose conduct forms a significant basis

---

[41]In their objections to plaintiffs' reply to the court's order to show cause in *Crowder*, defendants asserted that the court should not consider plaintiffs' evidence pertaining to the filing of *Bridewell-Sledge* because it exceeded the scope of the court's order to show cause and of their response. As the court noted in its order granting defendants leave to file a sur-reply, the court must consider this evidence, as it bears on the court's subject matter jurisdiction to hear the *Bridewell-Sledge* action. See FED.R.CIV.PROC. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("[A] court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action").

[42]Sur-Reply at 3-7.

for the claim asserted by the class be a citizen of the state.[43]  See 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)-(bb); *Coleman*, 631 F.3d at 1013-19 (remand under local controversy exception required where a defendant in-state subsidiary of a non-resident parent company satisfied the local controversy exception requirements).  There is no dispute that Blue Cross and Anthem are California citizens; indeed, it is precisely for this reason that prior to the addition of WellPoint as a defendant, neither the *Bridewell* nor the *Crowder* action was removeable.  Thus, to require that *all* defendants be citizens of the state in which the action was filed to invoke the local controversy exception – or, as defendants contend, to find that the controversy "uniquely affects" California – would be to rewrite the plain language of the statute.  This the court cannot do.  See *Kidd v. U.S. Dep't of Interior, Bureau of Land Mgmt.*, 756 F.2d 1410, 1412 (9th Cir. 1985) ("The Supreme Court has made quite clear that courts are not authorized to rewrite statutes, even though a statute might be 'susceptible of improvement,'" quoting *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 398 (1984)).

   Moreover, Senate Report 109-14, the "legislative history" on which defendants rely, was not submitted until eighteen days after the Senate passed the bill, eleven days after the House passed the bill, and ten days after the President signed the bill into law.  See *id.* (dated February 28, 2005); 151 Cong. Rec. H755 (daily ed. Feb. 17, 2005) (showing that the House passed CAFA on February 17, 2005); 151 Cong. Rec. S1249 (daily ed. Feb. 10, 2005) (reflecting that the Senate passed CAFA on February 10, 2005); *Bush v. Cheaptickets, Inc*., 425 F.3d 683, 684 (9th Cir. 2005) ("On February 18, 2005, the day after Bush filed his complaint in state court, the President signed [CAFA] into law").  For that reason, many courts have found the report "of minimal, if any, value in discerning congressional intent, as it was not before the Senate at the time of CAFA's enactment." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 n. 5 (9th Cir. 2009); *Corsino v. Perkins*, No. CV 09-09031 MMM (CWx), 2010 WL 317418, *6 (C.D. Cal. Jan. 19, 2010) ("The Senate Report was issued ten days after CAFA's enactment, which has caused some courts to question its value in discerning legislative intent"); *Moua v. Jani-King of Minnesota, Inc.,* 613 F.Supp.2d 1103, 1108 n. 4 (D. Minn. 2009) (questioning the value of the report as an interpretive aid); *Brook v. UnitedHealth Group Inc*., No.  CV 06-12954, 2007 WL 2827808, *5 (S.D.N.Y. Sep.27, 2007) ("The Senate report, however, was issued ten days after CAFA's enactment thereby suggesting it is of minimal value in discerning legislative intent," citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)); *Hangarter v. Paul Revere Life Ins. Co.,* No. CV 05-04558, 2006 WL 213834, *3 (N.D. Cal. Jan. 26, 2006) (finding the "report [to be] of dubious value as an interpretative aid"); cf. *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 871 n. 1 (9th Cir. 1981) ("There is even the possibility that some legislative history is manufactured for the purpose of misleading the courts as to what most members of Congress intended to enact").  Thus, even were there an ambiguity, the court would not afford the Senate Report the persuasive force defendants ascribe to it.

---

[43]Declaration of Denise Held, Docket No. 9 (Jun. 19, 2014), ¶ 2 ("The WellPoint Companies, Inc.'s [ ] corporate headquarters [is] located in Indianapolis, Indiana, where [its] executive operations are performed"); *id.*, ¶ 3 ("Defendant [The WellPoint Companies, Inc.] is now, and ever since this action commenced has been, incorporated under the laws of the State of Indiana, with its principal place of business in the State of Indiana, located at 120 Monument Circle, Indianapolis, Indiana").

Defendants next contend that the fourth prong of the local controversy exception should be construed liberally based on comments in the Senate Report concerning the discretionary nature of the exception set forth in § 1332(d)(3).[44] Specifically, defendants contend that because § 1332(d)(3) contains essentially the same criteria as the fourth prong of the local controversy exception, defendants contend that the legislative history of that section is instructive and "reinforces" the notion that remand is inappropriate here. See 28 U.S.C. 1332(d)(3)(F) (directing the district court to consider "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed" in deciding whether to grant discretionary remand). The report indicates that § 1332(d)(3) is intended to promote "efficiency and fairness," and directs courts to interpret it "liberally [so] that plaintiffs [will] not be able to plead around it with creative legal theories." See S. REP. NO. 109-14 at 38. Again, the court cannot agree. First, defendants' reliance on the Senate Report's interpretation of § 1332(d)(3) is misplaced because remand is discretionary under that section. The court has no discretion under the local controversy exception; it mandates that the court decline jurisdiction if the requisite showing is made. See 28 U.S.C. § 1332(d)(4) ("A district court shall decline to exercise jurisdiction. . ."); *Serrano*, 478 F.3d at 1022 ("§ 1332(d)(4) sets out two circumstances that *require* district courts to decline jurisdiction, the so-called 'local controversy' and 'home-state controversy' exceptions" (emphasis original)). In any event, plaintiffs have not pled to avoid jurisdiction by asserting "creative legal theories"; they have shown that *Bridewell-Sledge* was filed before *Crowder*, and defendants concede that no other action was filed asserting the same or similar claims within three years.

Defendants reference the fact that another action against them, *Early Strong v. Blue Cross of California*, Case No. BC 382405, was filed in Los Angeles Superior Court on December 28, 2007.[45] However liberally the court construed the statute, it could not conclude that *Strong*, filed three years and ten months before *Bridewell-Sledge*, renders the local controversy exception inapplicable. Defendants also contend that "efficiency and fairness," concerns discussed in the Senate Report regarding discretionary remand, as well as concerns respecting forum shopping, dictate that the court retain jurisdiction over *Bridewell-Sledge*. Again, however, defendants do not dispute that the fourth prong of the statute is satisfied, and the court is not free to rewrite it. See *Kidd*, 756 F.2d at 1412 ("The Supreme Court has made quite clear that courts are not authorized to rewrite statutes, even though a statute might be 'susceptible of improvement'"). Furthermore, defendants have proffered no evidence that plaintiffs were in fact forum shopping. Plaintiffs' counsel asserts that *Bridewell-Sledge* and *Crowder* were filed separately for case management reasons, and to avoid confusing jurors.[46] Specifically, he states that he separated the cases so that one action involved discrimination against women (*Bridewell-Sledge*) while the other involved discrimination against African-Americans (*Crowder*) as to pay and promotion.[47] He

---

[44]Surreply at 4-6.

[45]*Id*. at 2, 4-5.

[46]Jardini Decl., ¶ 4 ("I considered filing a unitary case concerning pay and promotion as to both gender and race, but was concerned that the inclusion of these four variables might be confusing").

[47]*Id.*, ¶ 6.

also states that he "intended always to request that the cases be handled by one judge, and . . . be consolidated," and that in "no sense" was the decision "to file two cases . . . for the purpose of judge shopping, or any other improper purpose."[48] Indeed, counsel proffers proof that plaintiffs supported consolidation of *Bridewell-Sledge* and *Crowder* in state court.[49] The court is mindful of the fact that remanding *Bridewell-Sledge* while retaining jurisdiction over *Crowder* leads to inefficiencies. As the court in *Sherman* observed, however, despite the "[u]ndoubted[ ] . . . inefficien[cy,] . . . in these circumstances the statute requires that the [c]ourt decline to exercise jurisdiction over the [first-filed] [a]ction." *Sherman*, 2011 WL 130240 at *3-4. The court therefore remains unpersuaded that it can retain jurisdiction over *Bridewell-Sledge*.

Finally, while simultaneously advancing their § 1332(d)(3) argument, defendants contend that because the court retains jurisdiction over *Crowder*, it can exercise supplemental jurisdiction over *Bridewell-Sledge*.[50] This is incorrect. The power of federal courts to exercise supplemental jurisdiction extends, "in any civil action," to "all other claims that are so related to [the] claims in the action" over which a district court has original jurisdiction that they form part of the "same case or controversy." 28 U.S.C. § 1367(a). "The phrases 'in any civil action' and 'in the action' require that supplemental jurisdiction be exercised in the same case, not a separate or subsequent case." *Ortolf v. Silver Bar Mines, Inc.*, 111 F.3d 85, 86 87 (9th Cir. 1997). Thus, "[i]n a [separate] lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Peacock v. Thomas*, 516 U.S. 349, 355 (1996); see also *Beneficial Fin. I Inc. v. Grace*, No. CV 11-00624 SOM, 2011 WL 6180132, *2 (D. Haw. Dec. 13, 2011) ("As other courts have recognized, this section does not authorize a court to exercise supplemental jurisdiction over state law claims in a different action").

The fact that the *Bridewell-Sledge* and *Crowder* actions were consolidated following their removal to federal court does not alter this conclusion. Section 1367 "does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal claim." *Morales v. Prolease PEO, LLC*, No. CV 11-10389 MMM (JCGx), 2011 WL 6740329, *4 (C.D. Cal. Dec. 22, 2011) (quoting *Estate of Tabas,* 879 F.Supp. 464, 467 (E.D. Pa. 1995)); see also *In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 12 (Bankr. N.D. Cal. 2002) (same), aff'd sub nom. *City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115 (9th Cir. 2006); *Chase v. Auerbach*, No. CV 94-5892, 1994

---

[48]*Id.*, ¶ 8.

[49]*Id.*, Exh. 1 (Transcript of Superior Court Proceedings on 7/10/13) at 7:28-8:7 ("The plaintiff would be open to consolidation. They are drafted as two separate complaints, I believe because it was just laying out the separate classes and subclasses. There are two distinct classes in each complaint. It was just a little easier to understand and to draft as two separate complaints, but we do understand there is an incredible amount of efficiency that would accompany consolidation.").

[50]Sur-Reply at 5-6.

WL 590588, *2 (E.D. Pa. Oct. 26, 1994) ("It is also established that '[a] District Court is not . . . endowed with jurisdiction to hear a case on removal merely because . . . a related case is pending in the federal court' " (citation omitted). To conclude otherwise would run contrary to the longstanding rule that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar*, 482 U.S. at 392. The fact that the court has jurisdiction to hear *Crowder* thus does not support the exercise of supplemental jurisdiction over the claims in *Bridewell-Sledge*.

In sum, plaintiffs have demonstrated that *Bridewell-Sledge* was filed 13 minutes and 50 seconds before *Crowder*. Because it is undisputed that no other action alleging the same or similar claims was filed against defendants within the three year period preceding the filing of *Bridewell-Sledge*, and because the parties concede that the first three requirements for invocation of the local controversy exception are satisfied, the court lacks subject matter jurisdiction under the local controversy exception, and must remand the case to Los Angeles Superior Court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### III. CONCLUSION

For the reasons stated, the court finds that the local controversy exception mandates that it decline to exercise jurisdiction over the *Bridewell-Sledge* action. Accordingly, the court lacks subject matter jurisdiction to hear the action. The clerk is directed to remand the *Bridewell-Sledge* action to Los Angeles Superior Court forthwith. The court will issue a separate order addressing the order to show cause in *Crowder*.